**In re WALDOFF'S, INC., Debtor.**

**Bankruptcy No. 9009166 HEG.**

United States Bankruptcy Court,
S.D. Mississippi.

Sept. 20, 1991.

---

Barton Nachamie, Todtman, Young, Tunick, Nachamie, Hendler and Spizz, New York City, for debtor.

T. Calvin Wells, Peter L. Doran, Jackson, Miss., for defendant.

Ron McAlpin, Assistant U.S. Trustee, Jackson, Miss.

## OPINION

EDWARD R. GAINES, Bankruptcy Judge.

Before the Court is the Application by Nachamie, Hendler & Spizz, Co–Counsel to the Debtor and Debtor–in–Possession, for Interim Allowance and Reimbursement of Necessary Expenses. Objections to the application were filed by the United States Trustee and by Orix Credit Alliance, Inc. Having considered the pleadings, the briefs submitted on behalf of all parties, and the applicable law, the Court has determined that said application should be denied for the reasons set forth below.

## I. FACTS [1]

1. Waldoff's, Inc. retained the New York law firm of Nachamie, Hendler & Spizz ("NHS") to effectuate a workout arrangement with its creditors.

2. When negotiations stalled, the debtor filed a voluntary petition for relief pursuant to 11 U.S.C. Chapter 11.

3. NHS moved for admittance pro hac vice before this Court and was approved as co-counsel to the debtor.

4. NHS subsequently filed an Application for Interim Allowance and Reimbursement of Necessary Expenses requesting $28,071.70 for 114.37 hours of legal services and $2,524.00 in expenses incurred for a total of $30,595.70. The balance requested after credit for an initial $10,000.00 retainer is $20,595.70. From the attachments to the fee application it can be seen that the hourly rate charged in the application by Barton Nachamie is $325.00 per hour, and $195.00 per hour for Perri E. Frosch.[2]

5. Objections to the application were filed by the U.S. Trustee and by Orix Credit Alliance, Inc.

6. The U.S. Trustee objects that NHS requests compensation at hourly rates which exceed the normal and customary hourly rate approved by the Court, failed to provide an explanation of documents copied or the necessity of using overnight delivery, failed to set forth the subject matter of entries whereby reasonableness or necessity of services may be determined, and seeks reimbursement of secretarial overtime.

7. The objection of Orix states that the fees are unreasonable for services performed, multiple attorneys are employed and there is duplication of effort, that the hourly rate charged by New York counsel is unreasonable in comparison to the customary hourly rate charged in this locality by experienced and knowledgeable bankruptcy attorneys, and that the debtor has failed to substantiate the need for New York counsel.

8. An order was subsequently entered authorizing Waldoff's to pay NHS $6,500 on account of fees and disbursements without prejudice to any of the parties' rights to examine the hourly rates and other matters contained in the application and stating that the application shall be subject to further review. A briefing schedule was set forth in the order requiring NHS to submit a memorandum of law in support of its application and the payment of their normal hourly rate with responsive memoranda to be submitted by the objecting parties.

9. Briefs were subsequently filed by the parties and submitted to the Court for consideration of the issues raised.

## II. LAW

The matter before the Court is a core proceeding under 28 U.S.C. § 157(b). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334.

The major issue presented for the Court's determination is whether the fee applicant should be entitled to recover its normal New York rate or should be limited by the customary rates charged by bankruptcy attorneys in the local community.

 Section 330(a) of Title 11 of the United States Code provides that:

(a) After notice to any parties in interest and to the United States trustee and hearing, and subject to sections 325, 328 and 329 of this title, the court may award to ... the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of compara-

---

1. Portions of this opinion are taken from the briefs submitted by counsel.

2. The current maximum hourly rate customarily allowed in this jurisdiction for local bankruptcy attorneys is $125.00.

ble services other than in a case under this title; and

(1) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a). The amount of fees to be allowed is a matter for the Court's discretion. *Rose Pass Mines, Inc. v. Howard,* 615 F.2d 1088 (5th Cir.1980); *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249 (5th Cir.1986); *In re Lawler,* 807 F.2d 1207 (5th Cir.1987). The burden is on the applicant to establish the value of his services and that the hours claimed were reasonably expended. *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249 (5th Cir.1986); *Alberti v. Klevenhagen,* 896 F.2d 927 (5th Cir.1990).

■ In determining the reasonableness of a fee, the Fifth Circuit has provided the following instruction:

> In this circuit, to determine a reasonable fee, the district court considers the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), in a three-step process: "(1) ascertain the nature and extent of the services supplied by the attorney; (2) value the services according to the customary fee and quality of the legal work; and (3) adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case." *Leroy v. City of Houston,* 831 F.2d 576, 583 n. 11 (5th Cir. 1987), *cert. denied,* 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988).
>
> In step one the district court determines compensable hours from the attorney's time records, including only hours reasonably spent ...
>
> In step two the court selects "an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." *Sims v. Jefferson Downs Racing Ass'n,*

778 F.2d 1068, 1084 (5th Cir.1985). The number of compensable hours is then multiplied by the selected hourly rate to produce the "lodestar." *Id.*

Finally, the district court may, in appropriate cases, adjust the lodestar up or down in accordance with relevant *Johnson* factors not already included in the lodestar. "[T]he 'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." (citations omitted). In adjusting the lodestar the court must be wary of the fact that the lodestar "is presumed to be the reasonable fee," (citations omitted) and that upward adjustments of the lodestar are appropriate only "in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." (citation omitted).

*Alberti v. Klevenhagen,* 896 F.2d 927, 929–30, *modified,* 903 F.2d 352 (5th Cir.1990).[3]

As pointed out in the brief submitted by the U.S. Trustee, there is a division of authority among the bankruptcy courts as to whether compensation should be limited to prevailing local rates:

> A division of authority exists on the question of whether compensation should be limited to the prevailing local rate even though the customary billing rate of an attorney or other professional is higher in his own locale. In a recent decision, Judge Newsom concluded the customary rate of a Los Angeles firm representing a debtor in a complex case filed in Ohio furnishes the starting point in fixing compensation:

---

**3.** The twelve factors referred to in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), include: (1) time and labor required; (2) novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

To limit fees to the rates charged by Cincinnati bankruptcy lawyers, merely because these cases happened to be filed in Cincinnati, would be a position too capricious and parochial to withstand analysis under [Code] § 330.

(citations omitted). According to Judge Pelofsky, when determining a reasonable fee the court must consider "local sensibilities and the economics of the local bar" as well as the "economics of out-of-state counsel and the customary fee in other jurisdictions." (citation omitted). In a complex case compensation based on a professional's customary billing rate, though exceeding the prevailing local rate, may be justified due to the professional's experience or expertise. (citation omitted). However, if a local professional with the required expertise could have been retained, a professional from another jurisdiction may be "reasonably compensated" even though the allowed fee is based on a rate lower than his customary charge. (citation omitted).

Clearly, in the absence of available local counsel with the personnel and resources necessary in a complex case, the prevailing local rate simply may not be reasonable compensation for a firm outside the jurisdiction whose customary billing rate exceeds the local rate. Likewise, when a firm has expertise uncommon to any local firm, reasonable compensation obviously should not be ascertained by any prevailing local rate.

*In re Southern Industrial Banking Corporation,* 41 B.R. 606, 612–13 (Bankr. E.D.Tenn.1984).

The Court in *In re Liberal Market, Inc.,* 24 B.R. 653 (Bankr.S.D. Ohio 1982) stated the following on the issue of hourly rates:

One issue which is, by definition, endemic to all fee applications is the proper hourly rate chargeable by professionals. This question has been the subject of considerable litigation ...

The basic litmus test for professional fees is the average rate charged by "local" professionals for similar work. The practical concept of locality, however, may vary depending upon the volume and difficulty of the work involved in a particular case. In determining average attorney fees, the "local bar" in an area of law necessitating both specialization and large volume work may bear only remote relation to the immediate geographic locality. Rather, if a case requires expert opinion, the fee for such service should be measured by the average charged by "local experts," meaning those experts typically consulted for assistance in geographically local matters.

Traditionally the practice of corporate and commercial law, the essence of most Chapter 11 proceedings, has been compensated with highly competitive salaries above those chargeable by the average practitioner. Legal services in cases, such as the case at bar, involving complex corporate legal problems requiring a large time commitment, have commanded particularly high compensation to attract the services of exceptionally qualified attorneys. In light of the desire to attract highly qualified practitioners to the field of bankruptcy, the higher fees chargeable by attorneys in related fields should be accommodated accordingly. On the other hand, the Court is under a duty to restrain unnecessary escalation of fees by insuring their general reasonableness ...

This Court is also of the opinion that the compensation requested by professionals within the same proceeding is relevant to the reasonableness of the fees of all the professionals before the Court. The fee requests of individuals whose work is high quality and requires a time commitment which can be compared to that of other professionals in the same proceeding may constitute key evidence, which can be adduced from the record itself, as to the *quantum meruit* value of the services of the latter. If attorneys perform similar tasks arising out of an identical factual circumstance, disparity in fee requests may itself indicate an inflated hourly rate or excess time involved in preparation.

*Id.* at 659. On the same general topic, the Court in *In re S.T.N. Enterprises, Inc.,* 70

B.R. 823 (Bankr.D.Vt.1987) offers the following:

In arriving at applicant's hourly rate, we must look to "the cost of comparable services." 11 U.S.C. § 330(a)(1) ... This Court has for some time regarded "comparable services" as the cost in the community or district where the services were rendered. (citations omitted). The phrase "cost of comparable services" does not mean the usual hourly billing rate of the applicant but means the fee customarily charged outside bankruptcy in the local community by someone who possesses similar skill, experience, expertise, stature, and reputation. (citations omitted). The justification for applying local rates has its source in an obligation to reduce the burden on creditors by obtaining local counsel when competent local counsel is available *In re Matter of Multiponics*, 622 F.2d 731, 734 (5th Cir. 1980); (citations omitted). We also think there is a strong economic justification for applying local rates in many cases. The estate arises in many cases within a local economy. The fixed costs and overhead factors, not the variable, are determined locally. Legal fees and other professional costs are generally considered as overhead. Accordingly, local rates should apply ... And of course, in a complex case of national scope, rates for nationally prominent, out-of-state counsel may apply. (citations omitted).

This case, though protracted and involving a large number of creditors, was not so extremely complex as to exceed the competence of a number of local attorneys. Indeed, local counsel, acting first as co-counsel, then lead counsel, appeared for the debtor throughout ...

Finally, the applicant has asked for an upward adjustment of this lodestar figure. We have not seen such rare and exceptional results on account of the applicant's efforts in this case as would warrant increasing the fees awarded. As the Supreme Court has recently pointed out:

In short, the lodestar figure includes most, if not all, of the relevant factors comprising a "reasonable" attorney's

fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.

(citation omitted). Because the result obtained generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award. *Blum v. Stenson*, 465 U.S. 886, 900, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984). Success, after all, is the result contemplated by Congress in enacting Chapter 11 of the Bankruptcy Code ... Similarly, neither complexity nor novelty of the issues is an appropriate factor in determining whether to increase the basic fee award. *Blum v. Stenson*, 465 U.S. at 898–99, 104 S.Ct. at 1548–49.

*Id.* at 842–44.

In the brief submitted for NHS, the case of *In re Temple Retirement Community, Inc.*, 97 B.R. 333 (Bankr.W.D.Tex.1989) was cited for support of the position that the debtor's counsel should not be precluded from charging non-local hourly rates. In that case the Court provided the following:

The community whose standard is applied to attorneys' fees in most civil litigation is normally presumed to be the local community in which the services are rendered ... *First Colonial [Corp. v. American Benefit Life Insurance Co. (In re First Colonial Corp.)*, 544 F.2d 1291, 1299] [ (5th Cir.1977) ] somewhat more broadly directs the court to consider the "customary fee" and "awards in similar cases." (citation omitted). Many bankruptcy cases are often more regional or even national than they are local in scope, so that looking solely to the local community's range of rates would impose an unnecessarily parochial cap on the case. (citation omitted). In addition, bankruptcy is sufficiently specialized that a firm with the skills necessary to meet the needs of a particular debtor might not be available in the local community. In this case, for example, the debtor required the services of a bank-

ruptcy specialist with the expertise to move a complicated case through the bankruptcy system quickly and efficiently. The complexities of the case justified hiring a bankruptcy specialist with a national reputation, but the venue for the case was clearly Waco, Texas. Limiting the "lodestar" to that customarily awarded in the Waco–Temple–Killeen market would have effectively deprived the debtor its choice of counsel. While it may well be that there are firms in the local market who could have handled the case, it cannot be denied that the Dallas firm the debtor chose achieved an extraordinarily favorable result for the estate with a minimum of litigation, and did so in a remarkably short period of time.

A firm may be justified in recovering their own normal rate in a given case, as opposed to the local rate in the city where the case is pending, when the circumstances of the case justify bringing in outside counsel, as was done here … Not every case warrants going outside the local community for representation. When the nature of a given case in fact justifies the retention of out-of-town counsel, however, local rates should not operate as a limiting factor in determining the reasonableness of the base fee sought.

*Id.* at 342–43. Citing *Temple Retirement,* the Court in *In re Washington Manufacturing Company,* 101 B.R. 944 (Bankr. M.D.Tenn.1989) also recognized that nonlocal rates may be approved where appropriate.

In an appropriate case, the prevailing rates of nonlocal counsel or the rate prevailing in the case locality should be merely factors, not self-limiting ones, in the court's determination of the reasonableness of the over-all charges made and sought. (citations omitted). Ultimately, the allowable rate "is what the court perceives to be the reasonable value of the services in the market place [however small or expansive that may be under the circumstances of each case], with due deference to the cost of comparable services." (citation omitted)

Here, the Court is satisfied that sufficient reason existed for the debtors' retention of the Kronish, Lieb firm so that this Court will not limit its fee award to the Nashville rates. (citations omitted). The specialization of the Kronish, Lieb firm in bankruptcy reorganizations of this type, the participation in that decision by the debtors' local counsel, the urgencies of the debtors' financial condition, the regional nature of the debtors' holdings and creditors, the fact that the primary creditor was a national lender, the locale of some large unsecured creditors in New York, and the involvement of nonlocal counsel for several creditors all support the reasonableness of the debtors' selection of Kronish, Lieb.

*Id.* at 952.

From a review of applicable cases on the issue of allowable hourly rates it can be seen that rates that are higher than those customarily charged in the community where the services are rendered or where the debtor is located may be charged and allowed when justified by the particular circumstances of the case.

■ Here, the debtor is a retail clothing merchandiser in the town of Hattiesburg, Mississippi, owned by one man, Milton Waldoff. The Court is unable to detect the presence of factors that would qualify Waldoff's Inc.'s corporate or financial structure as so intricately complex as to justify compensation for legal services on a basis equal to that paid by businesses in a New York locale, that may have national holdings and whose bankruptcy proceedings would encompass a national scope. The Court does not suggest in any way that Waldoff's, Inc. has not established a presence in the retail industry or earned a fine reputation, or alternatively, that NHS has not done an excellent job in performing high quality legal services on behalf of the debtor. However, the Court must look at the overall circumstances of the case with an eye toward guarding the assets of the estate, and must recognize that the complexities referred to in the cited cases that would justify payment of nationally based fees are not present in this case.

The Court acknowledges that NHS has had experience in litigating the major issue presented to the Court in this debtor's bankruptcy proceeding, that being the issue of whether a lease agreement entered into by the debtor was in actuality a lease, or whether it was in reality a disguised financing arrangement. The Court further recognizes that the debtor has prevailed in its position thus far.[4] The Court also acknowledges the efforts by NHS in trial preparation and negotiation on behalf of the debtor and the long history of bankruptcy practice by the firm. However, the Court cannot conclude that the legal issue presented was a novel issue that actually required the expertise of nonlocal counsel.[5] The Court is also unable to conclude that other counsel would not have been able to determine the existence or possibility of the legal issue brought before the Court.

Additionally, the Court notes that in the *Temple Retirement* case, cited by NHS, the Court pointed out that the law firm chosen achieved an extraordinarily favorable result for the estate with a minimum of litigation and did so in a remarkably short period of time. Although results of litigation obtained for the debtor here have been favorable to the debtor, the results were not obtained with a minimum of litigation, nor have they been obtained in a remarkably short period of time. The debtor has not yet been through the confirmation process, has obtained extensions of time for filing a plan, and there is no clear indication at this point that the debtor's reorganization attempt will ultimately enjoy success. Additionally, any final evaluation regarding those results would be premature at this time due to the current posture of appeals.

In summary, having considered the legal issues presented in this case, the local nature of the debtor's business, the availability of competent counsel in this district to present the issues before the Court, the potential disparity in fee awards for other professionals for comparable work, the current posture of the reorganization effort, as well as other factors noted above and legal authority from the Fifth Circuit, the Court cannot conclude that NHS would not be reasonably compensated for time spent and services performed at the maximum rate of compensation normally allowed for bankruptcy specialists in this district. The Court does conclude that under the circumstances of this case the maximum hourly rate of compensation for Nachamie, Hendler and Spizz that will be allowed from the debtor's estate will be limited by the hourly rates customarily charged in the local community.[6] On this basis the hourly rate of Barton Nachamie will be limited to $125 per hour, the rate for associates will be limited to $100 per hour, and the rate for paralegals will be limited to $45 per hour.

■ Additional points raised in the objections presented by the parties include lack of explanation for overnight delivery charges, secretarial overtime and lack of detail or subject matter in itemization of charges.[7] In *In re Lawler*, 807 F.2d 1207 (5th Cir.1987), the Fifth Circuit pointed out that "A fee application must be sufficiently detailed to allow the bankruptcy court to make an independent evaluation of whether

---

**4.** The Court has previously rendered two decisions in the Waldoff's Inc. bankruptcy proceeding, one involving Fleet Credit Corporation and the other involving Orix Credit Alliance, Inc., determining that the agreement designated as a lease was actually a financing transaction. Both matters have been appealed. The Court has been advised that the decision appealed by Fleet has been affirmed by the District Court.

**5.** Local counsel assisted NHS in the first trial before the Court on the lease/security interest issue involving Fleet Credit. In the second trial involving Orix Credit, which was a more lengthy and detailed trial, local counsel conducted the actual trial alone.

**6.** The Court notes that rates allowable in the Southern District of Mississippi are determined by those rates charged and obtained by members of the bar in this District for comparable nonbankruptcy services. This District includes the coastal counties and the Hattiesburg area as well as the state capitol of Jackson, Mississippi.

**7.** The Court's consideration of these issues at this time is without prejudice to the rights of the parties for further objection to the reasonableness of the nature and extent of the services, as the briefs primarily focused on the issue of hourly rates.

the hours claimed are justified." *Id.* at 1212. The Court agrees that the application should contain enough detail to allow independent evaluation of the reasonableness or necessity of services or expenses. On this basis, the fee application will be denied without prejudice at this time.[8]

These findings and conclusions are made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

A separate judgment shall be entered consistent with these findings of fact and conclusions of law pursuant to Rule 58 of the Federal Rules of Civil Procedure and Bankruptcy Rule 9021.

8. The Court would entertain an amended application by NHS revising the hourly rates in accordance with this opinion. Additionally, the Court would recommend that NHS work with the office of the United States Trustee in determining the sufficiency of detail needed for the Trustee's evaluation prior to submission of any amended application.