### In re John Dan WHITE.

### BUTLER, SNOW, O'MARA, STEVENS & CANNADA

#### v.

### Derek A. HENDERSON, Trustee for the Estate of John Dan White.

#### No. 3:94cv61.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 30, 1994.

L.F. Sams, Jr., Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, MS, for plaintiff, Butler, Snow, O'Mara, Stevens & Cannada and Charles F. Johnson III.

Howard M. Hoffman, Holleb & Coff, Chicago, IL, for defendants, Derek A. Henderson, Trustee for Estate of John Dan White.

Francis K. Horton III, U.S. Dept. of Justice, Office of U.S. Trustee, Jackson, MS.

Ronald McAlpin, U.S. Trustee, Jackson, MS.

LITTLE, District Judge.

### RULING AND ORDER

We write today to rule upon two applications for interim compensation and reimbursement of expenses filed by the law firm of Holleb & Coff, counsel to the trustee. For reasons that follow, we decline to grant, as tendered, either motion. Partial recovery is the limit of our approval.

### I.

Succinctly stated, this case involves a claim by parties allegedly adversely affected by activities undertaken by a law firm ("Butler, Snow") and one of its partners ("Johnson"). The Trustee has engaged the Chicago, Illinois law firm of Holleb & Coff to recover for certain bankrupt estates the damages suffered by the now bankrupt entities due to the misdeeds of Butler, Snow and Johnson.

It is not necessary to detail the facts and procedural wranglings surrounding the institution of this suit. Suffice it to say that the Trustee filed several, separate bankruptcy adversary proceedings against Butler, Snow and Johnson and that the undersigned withdrew these proceedings from the bankruptcy court and consolidated them with declaratory judgment suits previously filed by Butler, Snow. As an adjunct of the last event, the court assumed authority for approval of the Trustee's counsel's fees and charges, interim and final applications. Thus, the instant applications, labeled second and third interim applications, are properly before this court.[1]

### II.

As previously stated, Holleb & Coff currently presents two applications for fees and expense reimbursements—the second and third interim applications. Holleb & Coff's first application for fees and expenses covered the period from 1 July to 30 September 1993 and requested recovery of approximately $84,238.50.[2] The second interim application covers the period from 1 October through 31 December 1993[3] and requests recovery of $171,676.50 in fees and $16,011.60 in expense reimbursements. The third interim application covers the period from 1 January through 31 March 1994 and requests recovery of $276,726.75 in fees and $32,959.21 in expense reimbursements. Thus, in sum, from July of 1993 through March of 1994, Holleb & Coff has billed the bankrupt debtors $583,127.03: $532,641.75 for legal services and $50,485.28 for expenses. The applications currently at issue concern $497,374.06 of this total.

### A. Legal Standard

It is well established that "those seeking compensation for professional services rendered [and reimbursement for necessary expenses incurred] on behalf of a debtor's estate bear the burden of proof in establishing the reasonable value of their services." *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La.1986) (citing *Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.)*, 639 F.2d 1197 (5th Cir.1981)); *see also* 11 U.S.C. § 330(a) (court *may* award reasonable compensation for actual, necessary services rendered); Fed.R.Bankr.P. 2016(a). It is further well established that the court with authority over the dispute "has an independent duty to investigate the

---

1. We are cognizant of the bankruptcy court order approving the employment of Holleb & Coff to represent the trustee in "professional claim" matters. That order authorized the firm to charge its usual rates but provided that such authorization should not be interpreted as an approval of the rates charged. *See In re John Dan White*, No. 92–01939JC (Bankr.S.D.Miss. 16 July 1993) para. D ("Holleb & Coff may charge its usual and customary hourly rates for attorneys and paraprofessionals as specified in the application seeking employment, with the understanding that said rates may change from time to time in the ordinary course of business. Entry of

this Order is in no manner a Court approval of the rates requested.").

2. We reach this conclusion based upon the fact that the bankruptcy court awarded Holleb & Coff $67,390.80 and stated that this figure represented the amount claimed, less a 20% "holdback." *See In re John Dan White*, No. 92–01939JC (Bankr.S.D.Miss. 28 December 1993).

3. The second interim application also includes charges inadvertently omitted from the first interim billing period (submitted and digested by the bankruptcy court prior to the withdrawal).

reasonableness of the compensation sought." *Id.* (citation omitted); *see also In re Busy Beaver Bldg. Ctrs.,* 19 F.3d 833, 841 (3d Cir.1994) ("Beyond possessing the power, we think the bankruptcy court has a *duty* to review fee applications."). *See generally* Alan Hirsch & Diane Sheehey, Fed. Judicial Ctr., *Awarding Attorneys' Fees & Managing Fee Litigation* (1994).

■ The Fifth Circuit has enunciated a three-step procedure to be used in evaluating the reasonableness of requested compensation. First, the court "must ascertain the nature and extent of the services supplied by the attorney[s]." *In re First Colonial Corp.,* 544 F.2d 1291, 1300 (5th Cir.1977) (citations omitted), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1979). Second, the court must assess the value of those services according to the customary fee and quality of the legal work. *Id.; see also In re Waldoff's, Inc.,* 132 B.R. 329, 332 (Bankr.S.D.Miss.1991) (citation omitted). Third, the court may adjust the compensation on the basis of relevant *Johnson v. Georgia Highway Express, Inc.* factors.[4] *In re Viscount Furniture Corp.,* 133 B.R. 360, 363 (Bankr.N.D.Miss. 1991) (citation omitted). *But compare First Colonial,* 544 F.2d at 1300 (court must make specific findings as to application of each *Johnson* factor) *with Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (fee-shifting case) (consideration of *Johnson* factors discretionary) *and Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (same).

### B. *Nature and Extent of Services Rendered*

After exhaustive study of the records, we conclude that too many lawyers are spending too much time working on this case. The case is simply overlawyered. The following serve as illustrative examples.

At different times in the firm's representation, three lawyers attended one deposition, four lawyers met to discuss strategy, two lawyers made a one day trip to confer with a potential expert, and three or more lawyers worked on preparing, checking, revising, conferring, finalizing, and transmitting Rule 2004 motions and other pleadings and filings. On one occasion, six lawyers convened for 4.70 hours (28.20 man-hours) to plan strategy; four days later, one of the lawyers spent 1.80 hours reviewing and revising the "to do" list from the meeting, reviewing the notes from the meeting, and reviewing research memos. On another occasion, one $300 per hour lawyer discussed the case with a $335 per hour lawyer in the same office (who himself previously discussed the case with two other $100 per hour lawyers in the office).

As a result of their apparently frenzied assiduity in pursuing this litigation, the trustee's counsel incurred expenses that would have been unnecessary under another approach. For example, in working on the case through lunch and dinner, the lawyers billed the debtors' estates for their meals (and at times, for the Trustee's meals). In working weekends, the lawyers billed for meals, as well as travel to and from their office. In working late (but less than seven hours on the case), the lawyers billed for cab trips home.[5] In bringing extra personnel to attend Mississippi activities, they incurred unnecessary travel expenses.

Counsel also incurred unnecessary expenses unrelated to the extra effort. They used paralegals to perform secretarial tasks. They billed for calls from Jackson, Mississippi to parties not associated with the case, courier charges within the city limits of Chicago, a single charge for 185 minutes of "telecommunications," many other "telecommunications" charges without a statement as

---

4. The twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974) are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

5. One lawyer who requests reimbursement for cab fare also requests reimbursement for parking charges incurred as a result of taking the cab and (apparently) leaving his car at work.

to the party called, a $200 courier charge for documents sent by a Holleb & Coff paralegal to her office in Chicago, and courier charges of boundless proportions from Holleb & Coff's offices in Chicago to the Trustee's office in Jackson.

### C. *Value of Services to Bankruptcy Estates*

■ Holleb & Coff charges a different hourly rate depending on the attorney or paraprofessional doing the work. In the instant case, the firm's rate varied from $335 per hour for Mr. Redish(71),[6] to $300 per hour for Mr. Hoffman(68), to $260 per hour for Mr. Shapiro(83), to $190 per hour for Mr. White(84), to $150 per hour for Miss Simmons(91), to $145 per hour for Miss Schultz(90), to $135 per hour for Mr. Nortman(91). Nonlawyers billed at $95–105 per hour.

We review the propriety of the hourly charges by applying the same standard used to analyze the work performed and the expenses incurred, i.e. the standard of reasonableness. After considering all factors and being one experienced at gauging the need for the legal work done, the quality of the work done, the need to incur ordinary and necessary expenses in the performance of professional services, and the fees generally charged for those services by willing and able counsel in the broad vicinity of Jackson, Mississippi, it is this court's opinion that the reimbursable rate for senior experienced counsel, such as Mr. Hoffman is $175 per hour, for Mr. Shapiro $150 per hour, for Mr. White $110 per hour, for Miss Simmons $85 per hour, for attorneys Nortman and Schultz $80 per hour, and all less experienced individuals $40 per hour. *See Citibank, N.A. v. Multiponics, Inc. (In re Multiponics, Inc.),* 622 F.2d 731, 734–45 (5th Cir.1980) (customary fee for similar work in community is proper concern for the district court). *But cf. Gusman v. Unisys Corp.,* 986 F.2d 1146, 1151 (7th Cir.1993) (fee-shifting case) (attorney's normal hourly billing rate presumptively valid).

### III.

The court asks that Holleb & Coff redraw the proffered statements to reflect the enun-

ciated rate schedule. The court will then reduce the adjusted bill to reflect the determined overlawyering and unnecessary expenses.

We are constrained to make a final remark. As a means of dispute resolution, litigation takes too long and is too costly. Therefore, when electing to pursue litigation, clients must consistently consider the question: How much justice can we afford? When the clients are bankruptcy debtors, this obligation devolves upon the court. This court will not sit by and watch the bankruptcy debtors' coffers dwindle through the payment of excessive fees and unnecessary expenses. Neither, however, will the court continue to expend the considerable resources necessary to scour the trustee's counsel's fee applications. In the future, Holleb & Coff is advised to exercise its own wise discretion in tendering fee applications that represent reasonable compensation for reasonable services rendered. *See Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939–40 ("Counsel ... should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.").

---

6. The number after an attorney's name represents the year of admission to the bar.