2001 SD 89

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**William Boyd GUTHRIE, Defendant and Appellant.**

**No. 21466.**

Supreme Court of South Dakota.

Argued March 20, 2001.

Decided July 11, 2001.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Philip R. Parent of Arneson, Issenhuth & Gienapp, Madison, SD, Attorneys for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Defense Attorney, Philip R. Parent (Parent), appeals the monetary sanction imposed by the trial court for failing to comply with a reciprocal discovery order. We affirm in part and reverse and remand in part.

## FACTS

[¶ 2.] On August 30, 1999, an indictment was filed charging William Boyd Guthrie (Guthrie) with first-degree murder. Parent, as Guthrie's attorney, appeared and filed a pre-trial discovery motion that same day. On October 5, 1999, the State filed a Reciprocal Pre Trial Discovery Motion, which the trial court granted on October 27, 1999. Pursuant to the order, all discovery was to be completed by January 5, 2000.

[¶ 3.] On January 18, 2000, after the State had rested its case, Parent, for the first time, disclosed to the trial court and the State that Guthrie intended to introduce a purported suicide note into evidence as well as calling an expert witness

to authenticate the note.[1] The State objected. Over the State's objection, the trial court admitted the note into evidence and allowed Guthrie's expert to testify. The court reserved judgment on sanctions for violating the discovery order until after the trial.

[¶ 4.] On January 21, 2000, Guthrie was found guilty of first-degree murder.[2] On February 22, 2000, the State filed a Motion for Terms asking that Parent pay part of the State's costs in recalling its out-of-state expert witness to rebut the alleged suicide note. The next day, the trial court held a hearing on the State's motion. After argument, the trial court found that Parent had violated the court's reciprocal discovery order and imposed terms of $8866 on defense counsel pursuant to SDCL 23A–13–17. Parent appeals raising the following issue:

Whether the trial court erred in granting the State's motion for terms and in finding that defense counsel violated a reciprocal discovery order.

## STANDARD OF REVIEW

[¶ 5.] The imposition of sanctions by the trial court is reviewed under an abuse of discretion standard. *Aberle v.*

*Ringhausen,* 494 N.W.2d 179 (S.D.1992); *see also Doe v. Puget Sound Blood Center,* 117 Wash.2d 772, 819 P.2d 370, 373 (1991) (reviewing a discovery order, and noting that, "it is the proper function of the trial court to exercise its discretion in the control of litigation before it").

## ISSUE

[¶ 6.] **Whether the trial court erred in granting the State's motion for terms and in finding that defense counsel violated a reciprocal discovery order.**

[¶ 7.] First, we must review, based on an abuse of discretion standard, whether the trial court correctly determined that Parent had violated the court's reciprocal discovery order. As noted above, reciprocal discovery was to be completed by January 5, 2000. Parent concedes he knew of the note's existence six months prior to trial, and that he did not reveal the note until January 18, 2000, thirteen days after the discovery order deadline. Parent argues that he could not reveal the note's existence without violating the South Dakota Rules of Professional Conduct, namely Rule 1.6.[3]

1. Parent acknowledges that he knew of the note's existence as early as June of 1999. The note was admittedly found by Guthrie and was purported to be a suicide note written by his late wife. The note reads as follows:

> Dear Suzanne,
> I am sorry I ruined your wedding. Your dad told me about your concerns of interfering in Jenalu's and the possibility I might ruin hers. I won't be there so put your mind at ease. You will understand after the wedding is done.
> I love you all. Mom

2. This Court affirmed Guthrie's murder conviction in State v. Guthrie, 2001 SD 61, 627 N.W.2d 401.

3. Rule 1.6. Confidentiality of Information.

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
(1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or
(2) to establish a claim or defense on behalf of the lawyer or the lawyer's employees in a controversy between the lawyer or the lawyer's employees and the client, to establish a defense to a criminal charge or civil claim against the lawyer or the lawyer's employ-

[¶ 8.] Parent's argument fails for two reasons. First, the purported suicide note does not constitute confidential communication protected under Rule 1.6 because it is a written communication purported to be from the victim to her surviving children. Because the note is not written by Guthrie, as client, and addressed to Parent, as attorney, the umbrella of confidentiality does not cover Parent's obligation to turn over the note to the prosecution. *See generally Hogg v. First Nat'l Bank*, 386 N.W.2d 921 (S.D.1986). Furthermore, the note is physical evidence and, therefore, is not communication within the purview of Rule 1.6. Physical evidence, whether exculpatory or inculpatory, cannot be withheld by a criminal defense attorney. "[D]efense counsel may not retain physical evidence pertaining to the crime charged." *State v. Fairbank*, 192 Cal.App.3d 32, 237 Cal.Rptr. 158, 159 (1987). Therefore, "[a]n attorney may not act as a depository for criminal evidence, and he may not suppress such evidence." *State v. Dillon*, 93 Idaho 698, 471 P.2d 553, 565 (1970).

[¶ 9.] Second, the reciprocal discovery order issued by the trial court specifically states that all relevant documentary evidence is to be turned over to the other party. Parent does not dispute that the note is physical evidence. Rather, he argues that his ethical obligation to his client precludes him from complying with such order. As previously stated, his ostensible obligation to his client to not disclose the note, however well intentioned, does not provide Parent a defense to the court's discovery order.

[¶ 10.] We now turn the appropriateness of the monetary sanction employed by the trial court. Although Parent argues to the contrary, the trial court certainly had the power to levy such sanction. SDCL 23A–13–17 provides:

If, at any time during the course of a proceeding, it is brought to the attention of a court that a party has failed to comply with an applicable discovery provision, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and *may prescribe such terms and conditions as are just.*

(emphasis supplied). A plain reading of the statute makes it clear that the trial court has the authority to order monetary sanctions against a party in violation of its discovery order.

[¶ 11.] We have also recognized, apart from statutory authority, that courts have the inherent power to regulate trial procedure. *See e.g. Nauman v. Nauman*, 320 N.W.2d 519, 521 (S.D.1982); *City of Mount Vernon v. Althen*, 72 S.D. 454, 458, 36 N.W.2d 410, 412 (1949); *Simmons v. Simmons*, 66 S.D. 76, 79, 278 N.W. 537, 538 (1938). If the trial court has the power to order reciprocal discovery, the court, *inter alia*, has the power to enforce such order. It is also fair to assume, as a logical extension, that a trial court has the inherent discretion to impose costs upon another party for violating a court order regardless if it is a civil or criminal forum.

ees based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer or the lawyer's employees representation of the client;

(3) to the extent that revelation appears to be necessary to rectify the consequences of a client's criminal or fraudulent act in which the lawyer's services had been used.

Thus, a trial court has the inherent power to fashion an appropriate sanction for discovery violations in criminal cases, including monetary sanctions. *See e.g. United States v. Horn*, 29 F.3d 754 (1st Cir.1994) (affirming the trial court's imposition of monetary sanctions against a prosecutor for violating a discovery order in a criminal case).

[¶ 12.] This is a case of first impression for reviewing an award of reasonable expert fees as an appropriate sanction for a discovery violation. Although the trial court has the authority to impose sanctions, it must do so with reasonableness in mind. According to SDCL 19–15–16, "[t]he compensation of expert witnesses appointed by the court shall be fixed by the court at a reasonable amount." While this court rule only applies to appointed witnesses, a trial court must consider the totality of the circumstances in assessing reasonableness when determining expert fees. *See also City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 110 (S.D.1994); *City of Winner v. Bechtold Invest. Inc.*, 488 N.W.2d 416 (S.D.1992). Factors to consider when determining reasonableness include: 1) reasonable hours expended multiplied by a reasonable fee, 2) the severity of the sanction weighted against the equities of the parties, including ability to pay, 3) availability of less drastic sanctions which would prevent future abuses, and 4) other factors including the offending party's history and degree of bad faith contributing to the violation. *See White v. General Motors Corp. Inc.*, 908 F.2d 675 (10th Cir.1990); *Chittenden & Eastman Co. v. Smith*, 286 N.W.2d 314 (S.D.1979); *see also Aberle, supra*. While all factors may not apply in each case, the trial court should consider those factors material to its determination of "reasonableness."

[¶ 13.] First, the trial court should determine whether the expert's hourly rate and the time expended are reasonable. According to the State's records, the State's expert charged $350 per hour for his services. The State's records also show that the expert charged 16 hours for his testimony in rebuttal. There is no evidence in the record whether $350 per hour is a reasonable fee for this type of expert. What is in the record is the amount charged by the defense expert, $40 per hour.

> In general, a reasonable hourly rate would be the ordinary fee for similar work in the community. The term 'reasonable hourly rate' has been defined as the 'hourly amount' to which [experts] *in the area* would typically be entitled for a given type of work on the basis of an hourly rate of compensation.

*Emery v. State of South Dakota*, 132 F.Supp.2d 803, 810 (D.S.D.2001) (internal citations omitted). When comparing what the two experts charged, it is quite clear there is a great disparity in their fees. Like attorneys' fees, we do not accept the actual amount charged by experts as reasonable per se. *See Kelley, supra*. "The basic litmus test for professional fees is the average rate charged by 'local' professionals of similar work." *In re Waldoff's Inc.*, 132 B.R. 329, 333 (Bankr.S.D.Miss. 1991) (internal citation omitted). "If [experts] perform similar tasks arising out of an identical factual circumstance, disparity in fee requests may itself indicate an inflated hourly rate[.]" *Id.* "A litigant need not use local expert witnesses, but is not entitled to additional fees if he uses out-of-state experts where local ones are available. In such a case the court should set the expert fee according to the standard of the fee charged by local experts, and the litigant who chooses non-local experts must pay the difference." *Welton v. Falcon*, 341 So.2d 564, 573 (La.Ct.App.1976).

Thus, the trial court should determine what is a reasonable fee to be charged in South Dakota.

[¶ 14.] Likewise, the 16 additional hours expended by the State's expert should also be examined. Assuming the note had been seasonably turned over during the discovery period, the State might have had to incur costs to recall this witness. It should be determined whether the prosecution, regardless of whether or not defense counsel complied with the discovery order, would have avoided such expenses. Thus, the trial court should revisit this issue to determine what hours, if any, the State would have incurred had not defense counsel violated the court's discovery order.

[¶ 15.] Second, in determining the appropriateness of a sanction, "[t]he severity of the sanction must be tempered with consideration of the equities," including the ability to pay. *Chittenden,* 286 N.W.2d at 316–17. The record does not disclose whether "equities" were considered in the trial court's imposition of sanctions. While it is not the position of this Court to direct the State on who to hire as its expert, this Court will, however, consider the expenses attributable to such expert when considering the "equities" of the parties in determining reasonableness.

[¶ 16.] Lastly, the court should take into account whether defense counsel is court-appointed or has on prior occasions had difficulty complying with court orders are other factors to consider. Likewise, there should also be a determination whether the non-complying party's conduct was willful, malicious or done in bad faith. On remand, the court should consider the above-mentioned factors in determining a reasonable fee to be paid to the State for its expert because defense counsel failed to comply with the trial court's discovery order.

[¶ 17.] Until the trial court performs a factored analysis for determining reasonableness, we cannot perform a meaningful appellate review. Therefore, we affirm the trial court's finding that defense counsel violated the discovery order, and remand for further consideration on the reasonableness of the sanction given.

[¶ 18.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.