2002 SD 138

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**William Boyd GUTHRIE, Defendant and Appellant.**

**No. 22311.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 8, 2002.

Decided Nov. 20, 2002.

Michael R. Moore, Beadle County State's Attorney, Huron, SD, for plaintiff and appellee.

Philip R. Parent of Arneson, Issenhuth & Gienapp, Madison, SD, for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.]  This appeal arises from a remand hearing in which the circuit court determined the sanctions levied against attorney Philip R. Parent for violating a discovery order to be reasonable.  We reduce the amount of the sanction from $8,866 to $5,500.

## FACTS AND PROCEDURE

[¶ 2.] On January 21, 2000, William Boyd Guthrie was convicted of first-degree murder for the killing of his wife. *State v. Guthrie,* 2001 SD 61, ¶ 28, 627 N.W.2d 401, 413 (*Guthrie I*). During the course of the trial and after the State had rested its case-in-chief, defense counsel, Philip Parent, for the first time, disclosed his intent to introduce a purported suicide note into evidence. In order to authenticate this note, Parent also sought to call an expert to the stand. Although the trial court allowed the introduction of the note and the testimony of the expert, it reserved a ruling on whether Parent's actions violated the pre-trial discovery order * and whether the State should be awarded terms.

[¶ 3.] After the trial, the State filed a Motion for Terms, requesting that Parent be ordered to pay for part of the cost of recalling the State's expert witness, Judd Robbins, who lived in Nevada, to refute the alleged suicide note. After a hearing, the circuit court found that Parent had violated the discovery order, granted the State's motion, and ordered Parent to pay $8,866. Parent appealed that decision and we remanded the case back to the circuit court to determine the reasonableness of the sanctions. *State v. Guthrie,* 2001 SD 89, ¶ 17, 631 N.W.2d 190, 196 (*Guthrie II*). Because the trial court had not conducted a factored analysis for determining reasonableness, we instructed the circuit court to consider the following factors in the remand hearing: 1) reasonable hours expended multiplied by a reasonable fee; 2) the severity of the sanction weighted against the equities of the parties, including ability to pay; 3) availability of less drastic sanctions which would prevent future abuses; and 4) other factors including

the offending party's history and degree of bad faith contributing to the violation. *Id.* ¶ 12, 631 N.W.2d at 195 (citing *White v. General Motors Corp., Inc.,* 908 F.2d 675, 684–86 (10thCir.1990); *Chittenden & Eastman Co. v. Smith,* 286 N.W.2d 314, 316–17 (S.D.1979)).

[¶ 4.] The remand hearing was held on November 5, 2001. After considering all of the evidence, the circuit court judge concluded that the sanctions were not unreasonable. Parent appeals this decision, and raises the following issue:

> Whether the trial court erred in determining that the monetary sanction of $8,866 was reasonable.

## STANDARD OF REVIEW

[¶ 5.] "[T]he trial court's choice of remedy or failure to grant a particular remedy is reviewed under an abuse of discretion standard." *State v. Hagan,* 1999 SD 119, ¶ 19, 600 N.W.2d 561, 566 (citing *State v. Hofman,* 1997 SD 51, ¶ 17, 562 N.W.2d 898, 903). Pursuant to an abuse of discretion standard of review, factual determinations are subject to a clearly erroneous standard. *City of Deadwood v. Summit, Inc.,* 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25 (citing *New Era Mining Co. v. Dakota Placers, Inc.,* 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204) (citing *Rabenberg v. Rigney,* 1999 SD 71, ¶ 4, 597 N.W.2d 424, 425 (citing *In re Estate of O'Keefe,* 1998 SD 92, ¶ 7, 583 N.W.2d 138, 139)). "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *Id.* "The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them." *Lewis v.*

---

* Per court order, discovery was to be completed by January 5, 2000. Guthrie's jury trial commenced on January 10, 2000.

*Moorhead,* 522 N.W.2d 1, 3 (citing *Cuka v. Jamesville Hutterian Mut. Soc.,* 294 N.W.2d 419, 421 (S.D.1980)). Conclusions of law are reviewed under a de novo standard, giving no deference to the circuit court's conclusions of law. *Sherburn v. Patterson Farms, Inc.,* 1999 SD 47, ¶ 4, 593 N.W.2d 414, 416 (citing *City of Colton v. Schwebach,* 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771).

## ANALYSIS AND DECISION

[¶ 6.] **Whether the trial court erred in determining that the monetary sanction of $8,866 was reasonable.**

[¶ 7.] SDCL 23A–13–17 sets forth the remedies for breach of a discovery order or obligation. It provides:

If, at any time during the course of a proceeding, it is brought to the attention of a court that a party has failed to comply with an applicable discovery provision, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place, and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

Under this provision, " '[t]he remedy for nondisclosure of discoverable material is left to the sound discretion of the trial court.' " *State v. Hofman,* 1997 SD 51, ¶ 17, 562 N.W.2d 898, 903 (quoting *State v. Oster,* 495 N.W.2d 305, 309 (S.D.1993)). This Court in *Guthrie II* determined Parent to be in violation of the discovery statute. We found that Parent's "ostensible obligation to his client to not disclose the note, however well intentioned, does not provide Parent a defense to the court's discovery order." *Guthrie II,* 2001 SD 89, ¶ 9, 631 N.W.2d at 194.

Clearly, the requirement of candor towards the tribunal ... requires every attorney to be fully honest and forthright. We cannot overemphasize the importance of attorneys in this state being absolutely fair with the court. Every court ... has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it ... There is no allowance for interpretation.

*Discipline of Wilka,* 2001 SD 148, ¶ 15, 638 N.W.2d 245, 249 (internal citations omitted). Therefore, the only issue for the trial court to determine in the remand hearing was whether the sanctions were reasonable.

[¶ 8.] Parent argues that the trial court erred in finding that Robbins' rebuttal testimony would not have been necessary if the pre-trial discovery order had not been violated. Specifically, the trial court stated:

Based on my observations of this case if the note had been seasonably turned over during the discovery period, then the State would have had Robbins examine the second computer. Robbins would have determined that the alleged "suicide" note was a product of the second computer and compiled several months after Guthrie murdered his wife. By virtue of the discovery order the State would turn over this information to the defense. Under the circumstances, it is inconceivable that the defense would have offered this note into evidence. Therefore, Robbins would not have been called as a rebuttal witness and no further costs incurred. The further costs were directly and totally caused by the violation of the discovery order.

[¶ 9.] We find that the trial court was not clearly erroneous when it found that the increased expense in recalling Robbins

was caused solely by Parent's violation of the court's discovery order. After Parent's surprise introduction of the note, the State was left with little time to refute this evidence. Because the State had earlier used Robbins' expert testimony concerning evidence found on a different computer, it made sense for the State to utilize him again. As the circuit court noted, "[t]he State had approximately 48 hours to examine the note for fingerprints or in other ways refute this evidence." Furthermore, Robbins' rebuttal testimony was regarding the second computer containing the alleged suicide note. If the defense had seasonably turned over the note, Robbins could have conducted all his computer forensics and given testimony regarding both computers during the State's case-in-chief. Moreover, if the note had been properly given to the State during the discovery period, evidence concerning the note's creation date and its incriminating nature would have presumably deterred the defense from introducing it at trial.

[¶ 10.] Second, Parent argues that Robbins' fees were unreasonable and that the State made little effort to find a local expert. However, the trial court found that Robbins' fee of $350 per hour was reasonable because he is a highly qualified expert in computer forensics. Further, the trial court stated that "this was a murder case based solely on circumstantial evidence and the information stored on the computer was of great significance." Therefore, it was not unreasonable for the State to turn to an expert who is highly regarded in the computer forensics field and who the jury was already familiar with because of his earlier testimony. Additionally, the trial court stated that Parent did not present sufficient evidence that there was an available local expert who could have conducted a similar examination as performed by Robbins.

[¶ 11.] After a review of the record, we cannot say the trial court was clearly erroneous when it found Robbins' fees were reasonable or that Parent did not adequately show other local experts were available. Michael Waldner, who the defense used as its computer expert during the trial, testified at the remand hearing that other local experts were available to give similar testimony as Robbins and for less money. However, Waldner's testimony was based on an internet search, and he did not directly communicate with the individual company personnel. Waldner did not confirm these rates and did not give names of these "other" qualified persons in the area to substantiate their availability or the costs of such services. Finally, Waldner's own testimony conceded that Robbins was a most qualified computer expert and his fees were reasonable.

[¶ 12.] Third, Parent argues that the equities of this case do not support a sanction of $8,866 because he did not act in bad faith. Yet, the trial court found that Parent tried to "ambush" the State with this purported suicide note, hoping the State would not have time to refute the evidence. Hence, the trial court stated that Parent's actions amounted to a "high degree of bad faith." To explain his actions, Parent contends that he initially decided not to introduce the note or fingerprint testimony into evidence. However, this is irrelevant. "Physical evidence, whether exculpatory or inculpatory, cannot be withheld by a criminal defense attorney." *See Guthrie II*, 2001 SD 89, ¶ 8, 631 N.W.2d at 194 (additional citations omitted). There is sufficient evidence to support the trial court's finding that Parent acted in bad faith.

[¶ 13.] Nevertheless, additional equities of the situation merit consideration. Parent was court-appointed at the time of this violation. We are well aware

that those members of the Bar who serve as court appointed-attorneys do so at a significant reduction in compensation as compared to those defense attorneys who are privately retained. While a court-appointed attorney has the same high ethical obligations to the court, clients and opponents, this monetary differential is relevant.

[¶ 14.] Further, when examining Parent's ability to pay, it appears that this sanction of $8,866 is disproportionate to Parent's annual income of $50,000. Although discovery violations of this kind are not to be condoned, a sanction of twenty percent of an attorney's yearly income could be viewed as a devastating amount. A lessor amount of terms will still serve to send a message to attorneys and prevent future abuses. For the foregoing reasons, we reduce the amount of sanctions to $5,500.

[¶ 15.] SABERS, KONENKAMP, and ZINTER, Justices, concur.

[¶ 16.] AMUNDSON, Retired Justice, concurs.