#27109-a-LSW

**2015 S.D. 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

FRANK J. KABERNA, JEAN A.
RADEMACHER, ROBERT
RADEMACHER, THE ESTATE OF
DONALD KABERNA and
THE DONALD KABERNA TRUST,                    Plaintiffs and Appellees,


    v.


KAREN BROWN and DAVID BROWN,                    Defendants and Appellants.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CHARLES MIX COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRUCE V. ANDERSON
Judge

* * * *

TIMOTHY R. WHALEN
Lake Andes, South Dakota                    Attorney for plaintiffs
    and appellees.


WANDA HOWEY-FOX of
Harmelink, Fox & Ravnsborg
Yankton, South Dakota                    Attorneys for defendants
    and appellants.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 23, 2015

OPINION FILED **05/20/15**

WILBUR, Justice

[¶1.] Karen and David Brown appeal a judgment by the circuit court ordering the partition in kind of real estate in which they owned an undivided one-fourth interest with Karen's siblings and their respective spouses. We affirm.

## Background

[¶2.] Frank E. Kaberna (Frank E.) and Josephine Kaberna established two trusts, each in their respective names, on December 19, 1996, for the equal disposition of real property, "share and share alike," to their four children: Karen, Frank, Jean, and Don. The two trusts were funded with 533 acres of real property consisting of crop land, pasture land, and a homestead (Homestead). The Homestead consisted of a residence (Homestead Residence), livestock facilities, grain storage, equipment storage, and other assorted buildings. Most of the trust property has been owned by the Kaberna family for over 70 years.

[¶3.] Frank E. died in 2000, and Josephine died in 2003. Karen and Don served as successor trustees. In April 2012, the trust property was finally distributed in accordance with the terms of the two trusts. Each of the four children, along with their spouses, received a one-fourth undivided interest in the real property. Don, who died prior to the commencement of the underlying action, is survived by his wife Carol Lynn Kaberna. In the end, the real property subject to this action was owned one-fourth by Frank, one-fourth by Karen and David, one-fourth by Jean and Robert Rademacher, and one-fourth by Carol individually and as the legal representative of Don's estate and trust.

[¶4.]        Jean is married to Robert Rademacher (Bob).  Jean and Bob reside in Huron, South Dakota.  Carol lives outside of Wagner, South Dakota, on farmland that she and Don acquired.  Frank is unmarried and lives at the Homestead Residence, where he has lived for over 20 years.  Frank farms approximately 700 acres of land and stores his farm equipment in the buildings located on the Homestead.  He also raises guinea hens, peacocks, geese, and ducks at the Homestead.

[¶5.]        The Browns own and live on a farm immediately adjacent to the Homestead.  The Browns own a second farm, which they are currently selling to their daughter on an installment basis.  The Browns operate over 1,100 acres of land.  Upon Frank E.'s death in 2000, Karen purchased Frank E. and Josephine's cattle, sheep, and hogs (the Livestock Operation).  The Livestock Operation consists of about 150 cattle, 50 sheep, and 15 hogs.  The Browns used most of the pasture land surrounding the Homestead for the sheep and cattle.  They also used the feedlot, pens, and outbuildings for their Livestock Operation.

[¶6.]        Upon Josephine's death in 2003, the Browns leased crop and pasture land surrounding the Homestead.  Before Don died, Don and Carol met with the Browns and specifically told Karen that they would not reimburse her for the cost of any improvements that she made to the real property, and that if she did make any improvements, she did so at her own peril.  The leases further required Karen to maintain and repair the facilities on the leased premises at her own expense.  Indeed, the Browns made improvements to some of the property located on the Homestead.  The improvements included a new fence, the replacement of old gates,

the replacement of loaders at the silo, and the addition of a large livestock chute. The Browns paid for the improvements at a total cost of $41,072.

[¶7.] Frank, Jean, Bob, the Estate of Don, and the Donald Kaberna Trust (collectively, "the Plaintiffs") brought the underlying partition action against the Browns. At trial, the Browns offered extensive evidence of the antagonistic history between the parties. The circuit court found, "It is abundantly clear . . . that the Kaberna siblings do not get along." The court acknowledged that "evidence of the alleged 'fault' between the parties is not probative of the issues before the [c]ourt, but clearly shows the [c]ourt that a partition of the real property subject of this action is paramount to the well being of the Kaberna family." The Plaintiffs and the Browns both agreed that any partition ordered by the court should be fashioned so that Frank and Karen do not have regular contact with each other.

[¶8.] The Plaintiffs retained the services of Bryan Maas (Maas), a certified appraiser from Maas & Associates, Inc., to appraise the real property. Maas appraised the property at a value of $1,600,000.[1] The Browns did not dispute the value of the appraisal. In addition, Maas submitted a partition proposal for dividing the real property (the Maas Plan). The Maas Plan divided the crop and pasture land between the parties and carved out a small, six-acre tract of land for Frank that included the Homestead Residence as well as a few other buildings on

---

1. Maas had been retained prior to the commencement of the action as well. He made several appraisals of the property at issue. The parties attempted to craft a division plan for the property based on Maas's earlier appraisal, but they were unable to come to an agreement. As a result, the Plaintiffs brought the underlying action.

the Homestead. The majority of the Homestead and livestock facilities were to be distributed to Karen.

[¶9.] The Browns hired Gregg Hubner, a certified appraiser, to assess the Maas Plan and craft an alternative proposal (the Hubner Plan). Hubner considered the Maas Plan impractical because Frank and Karen's joint occupancy of the Homestead proved unworkable. Hubner further thought that, under the Maas Plan, the parties would have difficulty establishing the lot lines and separating the utilities that served the property. In light of these considerations, the Hubner Plan recommended that Karen receive the entire Homestead property along with the rest of the property she would receive under the Maas Plan. This would require Frank to move from the Homestead Residence to a new location. In turn, Karen would make a $200,000 equitable adjustment payment to the Plaintiffs. The circuit court found that this proposal amounted to a "partial forced sale by some of the Plaintiffs."[2]

[¶10.] After it became apparent to the Plaintiffs that the Maas Plan was problematic because it placed Frank and Karen in regular contact with each other, the Plaintiffs submitted a proposal that modified the Maas Plan (the Modified Maas Plan). The Modified Maas Plan essentially divided the Homestead area in half and awarded one half each to Frank and the Browns. Frank would receive the six-acre farm site with the Homestead Residence and 18 acres of surrounding land including

---

2. The circuit court further found that Hubner "appears to have relied upon inaccurate information which was provided to him by the Defendants, was guided by Dave throughout the visit he made to the property, and appears to
(continued . . .)

the property that the Browns improved. The Browns would receive 16 acres of the surrounding land. If this proposal was not accepted by the court, the Plaintiffs urged the circuit court to revert back to the original Maas Plan so that Frank would not be displaced from his home.

[¶11.] The Browns strongly opposed the Modified Maas Plan. The Browns argued that to partition the property in any fashion that leaves them without their buildings and structures for sheep will cause them to suffer "financial ruination." They contended that their ranching and farming operation could not continue without the improvements on the Homestead or without replicating those improvements on another property. The court, however, noted that the "bulk of the [Browns'] income is not from their sheep operation, but is from other farming activities or other sources." Nonetheless, the court noted that the Browns "have other structures on their other farms and real property near the home place that will allow them to easily transfer their sheep operation off the home place."

[¶12.] The circuit court rendered an extensive memorandum decision on February 20, 2014, and findings of fact and conclusions of law on May 7, 2014. The court ultimately adopted the Modified Maas Plan. The court found that the Modified Maas Plan was "simple, fair, equitable, and easily accomplished and effectuate[d] a plausible and equitable manner of partitioning the real property subject to this action." The court noted that the Browns "had the burden of proving

---

(. . . continued)

> have been coached heavily by the Defendants to recommend a partition plan which merely parroted the Defendants' desires."

that they would suffer a 'great prejudice' if the land were not sold to them as they proposed." The court found that the Browns "failed [to] present sufficient facts or evidence to carry this burden and there are no facts of any nature or sort in evidence which would support the contention that the [Browns] have met this burden." The Browns appeal the partition order and raise the following two issues for our review:

1. Whether the circuit court erred in adopting the Modified Maas Plan.

2. Whether the circuit court erred in admitting the Modified Maas Plan in contravention of the court's pretrial order.

**Standard of Review**

[¶13.] An action for partition of property "'is a proceeding in equity and the court has the inherent jurisdiction to adjust all the equities in respect to the property.'" *Englehart v. Larson*, 1997 S.D. 84, ¶ 12, 566 N.W.2d 152, 155 (quoting *Braaten v. Braaten*, 278 N.W.2d 448, 450 (S.D. 1979)). "Equitable actions are reviewed under an abuse of discretion standard." *Eli v. Eli*, 1997 S.D. 1, ¶ 8, 557 N.W.2d 405, 408. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850 (quoting *Arneson v. Arneson*, 2003 S.D. 125, ¶ 14, 670 N.W.2d 904, 910).

[¶14.] We review factual determinations under a clearly erroneous standard. *Id.* ¶ 8 (quoting *State v. Guthrie*, 2002 S.D. 138, ¶ 5, 654 N.W.2d 201, 203). "The question is not whether this Court would have made the same findings the [circuit]

court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed." *Id.* (quoting *Estate of Olson*, 2008 S.D. 97, ¶ 9, 757 N.W.2d 219, 222). We review the circuit court's conclusions of law de novo with no deference given to the circuit court. *Id.* (quoting *Guthrie*, 2002 S.D. 138, ¶ 5, 654 N.W.2d at 204).

## Analysis

[¶15.]   **1.     Whether the circuit court erred in adopting the Modified Maas Plan.**

[¶16.]   The partition and sale of real estate is governed by SDCL chapter 21-45. SDCL 21-45-1 provides:

> When several cotenants hold and are in possession of real property as partners, joint tenants, or tenants in common, in which one or more of them have an estate of inheritance or for life or lives or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein and for a sale of such property or a part thereof, if it appear that a partition cannot be made without great prejudice to the owners.

"If it appear to the satisfaction of the court that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof[.]" SDCL 21-45-28. "'Unless great prejudice is shown, a presumption prevails that partition in kind should be made. Forced sales are strongly disfavored.'" *Eli*, 1997 S.D. 1, ¶ 10, 557 N.W.2d at 408 (quoting *Schnell v. Schnell*, 346 N.W.2d 713, 716 (N.D. 1984)). "The proponent of the forced sale has the burden of proving great prejudice." *Gartner*, 2014 S.D. 74, ¶ 11, 855 N.W.2d at 851.

[¶17.]    The Browns argue that the circuit court's decision was unfair, inequitable, unreasonable, and has caused "great prejudice" to them.[3] The Browns advance several arguments in support of their claim that the court erred when it adopted the Modified Maas Plan. First, the Browns argue that the court erred when it refused to award them with the property that they improved and when it refused to compensate them for the value of the improvements. A circuit court has "discretion to deny entirely any award for the value of improvements in a partition action[.]" *Iverson v. Iverson*, 87 S.D. 628, 633, 213 N.W.2d 708, 711 (1973). The court personally inspected the Homestead and found that "many of the improvements are antiquated, outdated, in poor condition, and of little value," and there "is clearly nothing unique about the improvements aside from their

---

3.    It is important to note, however, that although the Browns repeatedly claim on appeal that they were greatly prejudiced by the circuit court's decision, they do not argue that a partition in kind cannot be made without great prejudice to them. Instead, the Browns merely argue that the Modified Maas Plan causes great prejudice to them. In their appellate brief, the Browns contend that "the manner that the trial court allocated the land greatly prejudices the Defendants," and therefore "the case should be reversed allowing them to continue their farming operation and allocating the real property in a manner to allow the family farm to be maintained and partitioned in an equitable fashion for all of the parties not just some of the parties." We have said that "a party has access to the remedy of partition by sale only in limited circumstances—when 'it appears to the satisfaction of the court that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners.'" *Gartner*, 2014 S.D. 74, ¶ 11, 855 N.W.2d at 851 (quoting SDCL 21-45-28). Because the Browns do not present any argument or cite to any authority that tends to suggest that the property "is so situated that partition cannot be made without great prejudice to the owners[,]" the Browns have failed to satisfy their burden of proving whether a forced sale is appropriate under these facts. *See id.* Accordingly, our review is limited only to whether the circuit court abused its discretion when it adopted the Modified Maas Plan. *See Eli*, 1997 S.D. 1, ¶ 8, 557 N.W.2d at 408.

sentimental value." This finding is supported by the testimony at trial of both Maas and Hubner. Hubner testified that all of the buildings were "functionally obsolete," and Maas agreed with this conclusion.

[¶18.] The Browns have not presented any argument that persuades us that these findings were clearly erroneous. Consequently, the circuit court did not err when it fashioned a partition in kind that distributed the improved property to Frank. Nor did the court err when it refused to award any extra compensation to the Browns for the improvements they made. The court explicitly found Karen was told that she would not be compensated for any improvements that were made while she leased the property. "The rule at common law is that a tenant in common cannot compel his cotenants to contribute to his expenditures for improvements placed by him on the common property without the consent or agreement of the cotenants." *Johnson v. Hendrickson*, 71 S.D. 392, 398, 24 N.W.2d 914, 917 (1946). "It is a well-settled principle that, in the absence of an agreement that the landlord will pay for improvements or a statute imposing liability on the landlord, a tenant is not entitled to compensation for improvements made to the leasehold even though they cannot be removed by the lessee." *Commercial Trust and Sav. Bank v. Christensen*, 535 N.W.2d 853, 858 (S.D. 1995).

[¶19.] Next, we address the Browns' argument that the circuit court erred because the adoption of the Modified Maas Proposal "forces [them] out of the livestock business and/or forces them to expend significant sums of money to replicate the improvements that they have paid for and that they need to continue their operation." The court considered this argument and found that "although

Karen does have significant capital invested in her [livestock] operation, . . . only a small portion can be attributed to the livestock improvements on the homestead, as most of the capital is in farming equipment, the livestock itself, and other items." Furthermore, the court found that, while the Browns "point to their tax returns to show the financial impact on their operation, such returns fail to show the breakdown of the improvements made at the homestead site, but rather shows all capital improvements for the Browns' total farming operation[.]" Lastly, the court noted that "the tax returns Karen submitted in evidence do not show a significant income from her livestock business, and it is certainly not her only means of living or getting by in life."

[¶20.] Again, the Browns have failed to show that the circuit court erred in this regard. In fact, this argument is wholly unsupported by the evidence presented at trial. The Browns own two farms and operate over 1,100 acres of land. The Livestock Operation is only a fraction of their total farming income. The Browns may relocate the Livestock Operation if they desire.[4] On this point, the court stated that it was "sympathetic to the displacement and relocation of the Browns' livestock operation, . . . but the [c]ourt was ultimately swayed by the great impact of removing [Frank] from [his] home of twenty-years when compared to [the] impact of displacement and relocation of the livestock operations that were operating based upon antiquated improvements." This can hardly be described as an abuse of discretion.

---

4. The Browns presented no evidence about the cost of moving the Livestock Operation.

[¶21.]     The remaining arguments asserted by the Browns on this issue lack sufficient merit for our consideration. In fashioning the partition in kind, the circuit court addressed the character and location of the land, the accessibility to the various parcels of property, practicality of partitioning the land, improvements to the property, and the importance of agricultural land to family members. The court concluded that the Modified Maas Plan was "the most fair and equitable partition plan in this matter." We agree. There is nothing in the record that leads us to believe that this conclusion was "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable." *See Gartner*, 2014 S.D. 74, ¶ 7, 855 N.W.2d at 850 (quoting *Arneson*, 2003 S.D. 125, ¶ 14, 670 N.W.2d at 910).

[¶22.]     **2.     Whether the circuit court erred in admitting the Modified Maas Plan in contravention of the court's pretrial order.**

[¶23.]     The Browns argue that the circuit court erred when it admitted the Plaintiff's Modified Maas Plan into evidence (Exhibit 19). The court entered a pretrial order stating that "the parties hereto shall . . . submit copies of said exhibits and a list of exhibits to each other and the court on or before June 7, 2013." The Plaintiffs notified the court and the Browns on the first day of trial, June 13, 2013, that they intended to offer Exhibit 19 into evidence as a demonstrative exhibit. The Browns objected. The next day of trial, June 14, 2013, the Plaintiffs reoffered the exhibit into evidence as an actual exhibit as opposed to a demonstrative exhibit. The court admitted the exhibit as a demonstrative exhibit.

[¶24.] "This Court reviews evidentiary rulings under an abuse of discretion standard." *Eagle Ridge Estates Homeowners Ass'n, Inc. v. Anderson*, 2013 S.D. 21, ¶ 12, 827 N.W.2d 859, 864 (quoting *Meadowland Apartments v. Schumacher*, 2012 S.D. 30, ¶ 24, 813 N.W.2d 618, 624) (internal quotation marks omitted). "'With regard to the rules of evidence, abuse of discretion occurs when a trial court misapplies a rule of evidence, not when it merely allows or refuses questionable evidence.'" *Wilcox v. Vermeulen*, 2010 S.D. 29, ¶ 7, 781 N.W.2d 464, 467 (quoting *State v. Asmussen*, 2006 S.D. 37, ¶ 13, 713 N.W.2d 580, 586).

[¶25.] The Plaintiffs argue that "the Browns do not come to this Court with clean hands on this issue." At the pretrial conference on May 29, 2013, the Browns disclosed their partition proposal to the circuit court and the Plaintiffs. On June 7, 2013, the Browns provided the court with three new proposals, Exhibits C, DD, and JJ. According to the Plaintiffs, they reviewed the new partition proposals from the Browns and prepared Exhibit 19 as a result. The court addressed Exhibit 19 and Exhibit JJ on the second day of trial.

> **The court**: Well my issue is neither of them prove a fact.
>
> **Plaintiffs' counsel**: No, they don't.
>
> **The court**: They just demonstrate each party's proposal so I consider them both demonstrative, and I'm going to consider both of them - -
>
> **Counsel**: Okay.
>
> **The court**: - - in my analysis.
>
> **Counsel**: That was my concern.
>
> **The court**: Yeah. No, ah, neither of them prove a fact.
>
> **Counsel**: Correct.
>
> **The court**: They just assist the court in understanding a proposal.
>
> **Counsel**: That's, that's exactly what I wanted the [c]ourt to do.

> **The court**: All right. Any problem with that, [Defendants' counsel]?
>
> **Defendants' counsel**: No, Your Honor.

[¶26.] Even assuming that the circuit court abused its discretion in admitting Exhibit 19 into evidence, the Browns have failed to demonstrate prejudice. Exhibit 19 modified the Maas Plan (Exhibit 16). The difference between Exhibit 19 and Exhibit 16 is that Exhibit 19 provided Frank with 18 more acres of the Homestead property. This property included the improvements made by the Browns. Karen testified about the improvements. Furthermore, the court received the Browns' income tax returns containing depreciation schedules and itemized deductions for farm related expenses. Karen testified as to these exhibits as well. We conclude that the court did not abuse its discretion. *See Eagle Ridge*, 2013 S.D. 21, ¶ 12, 827 N.W.2d at 864.

[¶27.] We affirm.

[¶28.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.