#29100-a-DG
**2020 S.D. 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ANNA MOECKLY and ROGER SCOTT
ORR, Personal Representatives of
THE SHARON L. ORR-HANSON
ESTATE,                                                    Plaintiffs and Appellees,

        v.

BENNET G. HANSON a/k/a
BEN G. HANSON,                                        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CLAY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TAMI BERN
Judge

\* \* \* \*

ROBERT B. DECK of
Deck Law, PLC
Sioux City, Iowa                                          Attorneys for plaintiffs
                                                              and appellees.


MICHAEL A. HENDERSON of
Swier Law Firm, Prof. LLC
Sioux Falls, South Dakota                            Attorneys for defendant
                                                              and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
APRIL 20, 2020
OPINION FILED **07/29/20**

#29100

GILBERTSON, Chief Justice

[¶1.]        Personal representatives for the estate of Sharon Orr-Hanson brought

a partition action for property owned by Sharon and her husband, Bennet Hanson.

The circuit court held the property was owned as tenants in common and ordered

partition.  Hanson appeals, arguing the property was held as joint tenants and

should go to him alone as the surviving joint tenant.  We affirm.

**Facts and Procedural History**

[¶2.]        Bennet Hanson (Hanson) and Sharon Orr-Hanson (Sharon) were

married in December 1994.  The day of their wedding, Hanson and Sharon entered

into an antenuptial contract, which stated in relevant part that "[i]n the event of

death of either party, any property, real or personal, jointly held by the parties

acquired either prior to marriage or thereafter, shall be that of the survivor."  The

couple lived in Sioux City, Iowa for three years before moving to Burbank, South

Dakota.

[¶3.]        They purchased the following described property in Burbank in 1996

"as joint tenants with right of survivorship and not as tenants in common:"

> Lot 13 of the Ponderosa Addition and Ponderosa Drive, Parts of
> Lot 1, Section 2 and Lot 1, Section 3, Township 91 North, Range
> 51 West of the 5th P.M., and Accretion thereto, Clay County,
> South Dakota.

In 1998, Hanson and Sharon purchased the lot next door as joint tenants with right

of survivorship as well:

> Lot 14 of the Ponderosa Addition and Ponderosa Drive, Parts of
> Lot 1, Section 2 and Lot 1, Section 3, Township 91 North, Range
> 51 West of the 5th P.M., and the Accretion thereto, Clay County,
> South Dakota.

[¶4.]        In December 2006, Craig Thompson, an attorney licensed in South Dakota, drafted a warranty deed for Hanson and Sharon that conveyed Lot 14 to themselves.  The deed did not contain any language that it would be held as joint tenants.  In April 2007, Thompson drafted another warranty deed, entitled "Corrective Warranty Deed."  The corrective deed did not correct anything except to add Lot 13 to the already transferred Lot 14.  The corrective deed also contained no language that the property would be held as joint tenants.  In May 2007, Hanson and Sharon sold Lot 14.

[¶5.]        Sharon was diagnosed with pancreatic cancer in October 2016 and passed away in February 2017.  Anna Moeckly, Sharon's granddaughter, and Roger Scott Orr, Sharon's son from her first marriage, acting as personal representatives (collectively, the Personal Representatives) of her estate, opened a probate in Polk County, Iowa, where Sharon had been living between her cancer diagnosis and her death.  Sharon's will stated in relevant part:

> I give, devise and bequeath my one-half interest in and to my current residence which is located at 32193 Ponderosa Drive, Burbank South Dakota, to my children, . . . in equal shares, share and share alike, they to have and to hold the same absolutely and forever in fee.

The Personal Representatives opened an ancillary probate in Clay County, South Dakota to deal with Sharon's one-half interest in the Burbank property, which they believed to be held as tenants in common.

[¶6.]        In March 2017, Hanson asked Thompson to draft an affidavit for termination of joint tenancy under SDCL 21-44-27 and gave Thompson the 1996 deed for Lot 13 to base the affidavit on.  At that time, Thompson did not remember

about the 2006 and 2007 deeds he had drafted and proceeded to draft the affidavit to sever the joint tenancy. However, on May 1, 2017, after the affidavit had been filed, Thompson sent Hanson a letter indicating that it had come to his attention that the corrective deed changed the interests in Lot 13 to a tenancy in common, so the affidavit to sever joint tenancy would have no effect.

[¶7.] The Personal Representatives brought this partition action to have the property sold and the proceeds split evenly based on the belief that the property was owned as tenants in common. Both Hanson and the Personal Representatives made motions for summary judgment. The only dispute of consequence between the motions was whether the property was held as joint tenants with rights of survivorship or as tenants in common. The circuit court considered the motions at separate hearings and denied them both, finding that the issue of how the land was held was a disputed fact.

[¶8.] Hanson also made a motion to amend the pleadings to add a third-party complaint against Moeckly, challenging Sharon's will for undue influence and lack of testamentary capacity. The circuit court determined that the amendment would be futile, as Moeckly would not be liable to Hanson for any of Moeckly's claims against him in the partition action. In denying the motion, the court noted that Hanson's claim would be better brought in the probate matter because "[t]he contest of a will is not a logical third-party complaint in this action for partition[.]" The court also denied the motion based on "undue delay, bad faith on the part of the moving party, and unfair prejudice to the unmoving party."

[¶9.] The parties originally set the case for a jury trial, but the Personal Representatives made a motion to strike Hanson's jury demand, and the circuit court granted the motion because partition is an equitable action. The circuit court later denied Hanson's motion for reconsideration on that issue as well.

[¶10.] At the partition hearing, Moeckly, Thompson, and Hanson testified. The court granted Hanson's motion to exclude expert testimony from Thompson as irrelevant, so Thompson testified only as to his drafting of the deeds and affidavit and his interactions with Hanson and Sharon. Thompson recalled a conversation with Hanson and Sharon in which they asked Thompson to draft the 2006 deed and stated that they wanted to change the way the property was held to a tenancy in common. Thompson further testified that he had minimal interactions with Hanson in the process of drafting the wills, and that he did not remember specifically when he would have met with Hanson and what the conversations had specifically entailed. Hanson's testimony expressed a different recollection of his and Sharon's interactions with Thompson. Hanson claimed the conversation regarding changing the manner in which the property was held to a tenancy in common never happened, and that he and Sharon met with Thompson at least once before each deed was signed.

[¶11.] The circuit court held that the corrective deed terminated the joint tenancy and created a tenancy in common. The court found Thompson's and Moeckly's testimony credible, but found Hanson's testimony not credible. The court also found that after Sharon's death, Hanson provided Thompson the 1996 deed, rather than the 2007 corrective deed, in an attempt to fraudulently terminate

Sharon's estate's interest when he knew the 2007 deed had changed title in the property to tenants in common. Because partition was impractical, the circuit court ordered the property sold and the proceeds divided between the one-half interests held by Hanson and Sharon's estate.

[¶12.] Hanson filed motions for a new trial and for relief from judgment and order. Hanson also filed a motion for clarification of the memorandum opinion. Hanson claims he never received notice that the court had extended the time to respond to the motion for a new trial, so presumed that it had been denied by operation of law and filed a notice of appeal. The circuit court determined that the notice of appeal removed any jurisdiction it had over those motions. The circuit court also granted a stay of judgment pending appeal. Hanson's appeal raises three issues:

1. Whether the circuit court erred in concluding the corrective deed severed the joint tenancy.

2. Whether the circuit court erred in concluding a jury trial was not appropriate.

3. Whether the circuit court based its decision on issues not properly before the court.

## Analysis and Decision

[¶13.] Partition actions are equitable actions reviewed for abuse of discretion. *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850. A circuit court's "factual determinations are subject to a clearly erroneous standard." *Id.* ¶ 8, 855 N.W.2d at 850 (quoting *State v. Guthrie*, 2002 S.D. 138, ¶ 5, 654 N.W.2d 201, 203). "We give no deference to the circuit court's conclusions of law, however, and review them under a de novo standard." *Id.*

>   *1.      Whether the circuit court erred in concluding the corrective deed severed the joint tenancy.*

[¶14.]      Hanson argues that the circuit court erred in deciding that the corrective deed severed the joint tenancy on Lot 13 and created a tenancy in common.  He emphasizes that the court never found that the four unities for joint tenancy were destroyed and argues that the court's reliance on SDCL 43-2-12, and 43-2-16 is misplaced.  SDCL 43-2-12 provides: "A joint tenancy interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to personal representatives or trustees as joint tenants." SDCL 43-2-16 provides: "An interest in common is one owned by several persons not in joint ownership or partnership."

[¶15.]      Hanson argues that SDCL 43-2-17 is the more relevant statute, but that it is only concerned with interests at the time of creation, and he asserts that the corrective deed did not create new interests.  SDCL 43-2-17 provides: "Every interest created in favor of several persons in their own right is an interest in common . . . unless declared in its creation to be a joint interest, as provided in §§ 43-2-12 to 43-2-14, inclusive."

[¶16.]      In South Dakota, a "joint tenancy exists when the four unities of time, title, interest, and possession are present." *In re Estate of Hoffman*, 2002 S.D. 129, ¶ 9, 653 N.W.2d 94, 98.  A joint tenancy can be dissolved by destruction of one of the four unities. *Id.*  But a joint tenancy can also be severed if the joint tenants agree, expressly or as implied from the parties' conduct, to hold the title as tenants in common. *Zulk v. Zulk*, 502 N.W.2d 116, 118 (S.D. 1993).  The circuit court found

intent to sever the joint tenancy within the corrective deed, as an agreement between the parties. Sharon's bequeathing a one-half interest in the property in her will further supported the court's finding.

[¶17.]    Hanson's response is that a deed is not the same as a contract, and that the will, executed a decade after the deed was drafted, says nothing of Sharon's intent in 2007. More important than those issues, though, is the fact that joint tenancy language does not appear in the corrective deed. Hanson focuses on a general rule that silence does not serve as evidence of intent. He cites to multiple out of state cases from different areas of the law stating as much. *See, e.g.*, *Horner v. Jeffrey*, 823 F.2d 1521, 1537 (Fed. Cir. 1987) (reaffirming that silence is not evidence of Congressional intent); *Van Houdnos v. Evans*, 807 F.2d 648, 655 (7th Cir. 1986) (holding silence in response to a discriminatory remark was not evidence of discriminatory intent); *Youngs v. Conley*, 505 S.W.3d 305, 314 (Mo. Ct. App. 2016) (providing that silence was not evidence of intent by an offeree to accept an offer and create a contract).

[¶18.]    Hanson also cites *In re Estate of Potthoff*, a decision from the Nebraska Supreme Court that stated that "in order to be effective, 'the act of severance must clearly and unequivocally signify an intent to sever.'" 733 N.W.2d 860, 866 (Neb. 2007) (quoting 7 Richard Powell & Michael Allen Wolf, *Powell on Real Property* § 51.04[1] at 51-16 (2001)). But Hanson failed to acknowledge that same case's statement that while courts vary in determining what severs a joint tenancy, "most courts agree that a joint tenancy may be severed when title to the property is changed." *Id.* "Such a change may result from a conveyance of a joint tenant's or

tenants' full interest to a third party or directly to himself, herself, or themselves as grantee or grantees[.]" *Id.*

[¶19.]        In South Dakota, a joint tenancy must be expressly declared in the property transfer.  SDCL 43-2-12.  If it is not expressly declared, the interest created is a tenancy in common.  SDCL 43-2-17.  Hanson argues that SDCL 43-2-17 does not apply here because it involves creation of interests and he believes the corrective deed did not create an interest.  But changing the property interest by transfer, even to oneself, creates a new interest.  The corrective deed's lack of express declaration of a joint tenancy results in a tenancy in common.

[¶20.]        Hanson additionally argues that any evidence of intent here, being primarily based on Thompson's testimony, is unsupported and speculative.  He claims that the court's finding of intent is based on mischaracterization of the facts, and that any statements about fraud by Hanson are "nonsensical" and "ludicrous."[1] The Personal Representatives respond that Thompson was clear and honest in his testimony about what he did and did not remember regarding conversations with Hanson, the deeds, and the affidavit to sever the joint tenancy, and that the findings are far from clearly erroneous.  It is the circuit court's role to judge the credibility of witnesses, and "due regard shall be given to" those determinations.

---

1.        Hanson's counsel makes several assertions in the briefs that the circuit court acted in a "ludicrous" or improper manner and specifically attacked some of the court's findings as "nonsensical."  After the proceedings below, Hanson's counsel also filed a motion for a new trial accusing the judge of unfairness in not disclosing a prior work relationship with Thompson.  The attacks on the judge's fairness and credibility are unwarranted and unprofessional.  They show an absence of the respect due to judges and all those who serve in our legal system.  *See, e.g.*, *In re Discipline of Dorothy*, 2000 S.D. 23, 605 N.W.2d 493; *In re Discipline of Eicher*, 2003 S.D. 40, 661 N.W.2d 354.

SDCL 15-6-52(a). We will not overturn the court's credibility determination based on this record.

[¶21.] Finally, Hanson argues that severing the joint tenancy would violate Hanson's and Sharon's antenuptial contract. He cites primarily to *Miska v. Miska*, a Minnesota case in which a married couple entered an antenuptial agreement requiring the husband to transfer a one-half interest in property to the wife as a joint tenant with right of survivorship, and a subsequent quit-claim deed on the property did not contain the joint tenancy language. No. A06-1393, 2007 WL 2106506, at *1 (Minn. Ct. App. July 24, 2007). Minnesota recognizes joint tenancies "only through express declaration[,]" but the court determined that the absence of that language in the deed was a drafting error that did not sever the joint tenancy. *Id.* at *3. In that situation, the antenuptial agreement and deed were filed the same day, which supported a finding that the parties intended not to change the joint tenancy. *Id.* The case is not instructive here, where two different deeds were made within a few months that did not include joint tenancy language, and where the record shows Sharon proceeded to make her will under an assumption that her interest in Lot 13 was as a tenant in common.

[¶22.] The Personal Representatives assert that the antenuptial contract's survivorship provision applied only to jointly held property, which Lot 13 no longer was. Hanson argues that the term "jointly held" is not limited to property held in joint tenancy, citing cases from multiple states. *See Hoxie v. Page*, 23 F. Supp. 905, 911-12 (D. R.I. 1938) (noting jointly held could mean tenancy in common); *In re Estate of Serovy*, 711 N.W.2d 290, 294 (Iowa 2006) (including tenancy in common as

jointly held property when interpreting Iowa's Medicaid recovery statute); *In re Snortland's Estate*, 311 N.W.2d 36, 38 (N.D. 1981) (describing a tenancy in common as jointly held property). Hanson also argues that the corrective deed did not modify the antenuptial contract, and the contract should not be interpreted to be meaningless. *See Estate of Fisher v. Fisher*, 2002 S.D. 62, ¶ 14, 645 N.W.2d 841, 846 (providing that "[a] contract should not be interpreted in a manner that renders a portion of it meaningless"). *See also Story v. Shircliffe*, No. 2009-CA-000699-MR, 2010 WL 2428137, at *6 (Ky. Ct. App. June 18, 2010) (stating documents not mentioning an antenuptial agreement did not amend the agreement).

[¶23.]     The relevant section of the antenuptial agreement states: "In the event of death of either party, any property, real or personal, jointly held by the parties acquired either prior to marriage or thereafter, shall be that of the survivor." The antenuptial agreement also states that it is governed by Iowa law. Thus, we apply Iowa law in addressing this issue. *See, e.g.,* SDCL 25-2-18 ("Parties to a premarital agreement may contract with respect to: . . . The choice of law governing the construction of the agreement . . ."); *Dunes Hosp., L.L.C. v. Country Kitchen Int'l, Inc.*, 2001 S.D. 36, ¶ 10, 623 N.W.2d 484, 488 ("We have generally recognized that parties may agree to be bound by the law of a particular state."). "Jointly held property" is defined in an Iowa statute as "property held in the name of two or more persons under an arrangement in which all holders have concurrent interests and under which the last surviving holder is entitled to the whole of the property." Iowa Code § 633E.2(5). This section of the antenuptial agreement, when applying Iowa law, confirms survivorship rights for property held in joint tenancy at the death of

one party. Even though this language is arguably superfluous, adopting Hanson's asserted interpretation of the agreement would require an expansion beyond the language contained therein.

[¶24.]     Antenuptial contracts are interpreted in the same way as any other contract. *Peet v. Monger*, 56 N.W.2d 589, 593-54 (Iowa 1953). The central issue is determining the parties' intent. *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001). To determine that intent, "the antenuptial contract . . . must be taken by its four corners and studied as a whole." *Peet*, 56 N.W.2d at 593. Intent will be determined through the language of the contract and surrounding circumstances. *In re Estate of Ascherl*, 445 N.W.2d 391, 392 (Iowa Ct. App. 1989). Iowa law does not allow antenuptial agreements to be amended, only "revoked, abandoned, or the rights thereunder waived." *In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *5 (Iowa Ct. App. Oct. 10, 2018).

[¶25.]     While the corrective deed could not modify the antenuptial agreement, here, the agreement states only that jointly held property be given to the survivor upon the other's death. Nowhere in the agreement does it state that property is required to be held jointly. Hanson argues that the contract "contemplates that whenever the parties acquire property together . . . that property must go to the surviving spouse."[2] But the agreement does not state that. It does not mandate

---

2.     In support of his argument, Hanson refers to section seven of the antenuptial contract, which states:

>     Each party agrees that in the event that the marriage relationship shall result in separation, termination by dissolution, or cease by death of one of the parties, that he or she

<span style="text-align: right;">(continued . . .)</span>

that property be acquired jointly, or that once property is acquired jointly its status cannot be changed to a tenancy in common.

[¶26.] Therefore, the court did not err in determining that the antenuptial agreement did not preclude Hanson and Sharon from holding Lot 13 as tenants in common. The court also correctly concluded that without express language in the deed, Hanson and Sharon did not hold Lot 13 as joint tenants, and partition is thus appropriate. *See* SDCL 43-2-12, -17.

> 2. *Whether the circuit court erred in concluding a jury trial was not appropriate.*

[¶27.] Hanson next argues that the circuit court erred in concluding that this was an equitable action so that Hanson was not entitled to a jury trial. Hanson urges that the issue of whether the joint tenancy had been severed is a factual question, requiring a jury's determination before the parties could move into the partition action.

---

(. . . continued)

> shall make no claim to any separate property of the other except as otherwise provided herein. Each party hereby waives all rights of dower, courtesy, homestead, distributive share, right of election against a will, widow's allowances, any spousal rights to separate property which may accrue in dissolution, and any other marital right arising by virtue of statute or otherwise, in and to the separate property the other party now owns or may hereafter acquire directly with or from the proceeds of earnings from property presently owned by each party or acquired by inheritance or descent.

> However, this section only relates a waiver of each party's claim to the other's separate property already owned or acquired after the marriage with separate funds. It does not restrict the manner in which property acquired with marital funds may be held.

[¶28.]     Hanson primarily cites to *Kenny v. McKenzie*, to support his argument, relying on the statement that "only those issues which arise upon controverted facts which are the foundation of a legal right or title require a jury trial when not waived." 25 S.D. 485, 127 N.W. 597, 601 (S.D. 1910). He argues there are controverted facts here that require a jury trial.

[¶29.]     However, Hanson's argument ignores the fact that the right to a jury trial does not exist for all civil cases. *Granite Buick GMC, Inc. v. Ray*, 2014 S.D. 78, ¶ 7, 856 N.W.2d 799, 802. Where the pleadings request equitable relief, or where the legal relief is incidental, the decision to grant or deny a jury trial is at the trial court's discretion.[3] *Id.* "[D]isputed questions of fact can be involved in either legal or equitable actions." *Id.* ¶ 11, 856 N.W.2d at 804. "Therefore, the mere existence of a dispute of fact does not dictate whether a claim is equitable or is one at law to which the jury trial attaches." *Id.* The question in determining if an action is at law or equitable "is whether the 'subject' of the action 'is the type of case in which the movant would have been entitled to a jury trial in the common-law courts.'" *Id.* ¶ 9, 856 N.W.2d at 803 (quoting *State v. One 1969 Blue Pontiac Firebird*, 2007 S.D. 63, ¶ 18, 737 N.W.2d 271, 276).

[¶30.]     This has been a partition action from the start, and partition is an equitable proceeding. *See Gartner*, 2014 S.D. 74, ¶ 7, 855 N.W.2d at 850. Hanson was not entitled to a jury trial, and the circuit court did not abuse its discretion in denying one.

---

3.     Even if a jury trial is granted, "unless the parties agree to a binding jury in an equitable action, the jury verdict is [only] advisory." *Granite Buick*, 2014 S.D. 78, ¶ 7, 856 N.W.2d at 802.

> 3. *Whether the circuit court based its decision on issues not properly before the court.*

[¶31.] Finally, Hanson argues that the circuit court's decision should be reversed because it relied in part on findings about Sharon's mental competency and possible undue influence in creating her will. Hanson argues that because the court denied his motion to amend the pleadings, finding those issues improper to raise in a partition action, it could not properly make those findings. Hanson cites no authority in this portion of the brief. As such, he has waived the issue. *State v. Patterson*, 2017 S.D. 64, ¶ 31, 904 N.W.2d 43, 52.

[¶32.] Even so, the issue is without merit. While the circuit court did determine that the issues were not appropriate to bring as a third-party claim in this partition action, Hanson's counsel spent a significant amount of time cross-examining Moeckly about her participation in making Sharon's will shortly before her death and questioned Moeckly about whether Sharon had ever been declared incompetent. The line of questioning strongly hinted at the issue of undue influence, and Hanson's counsel specifically brought up undue influence in his closing argument. Based on that testimony, it was not unreasonable for the court to make its limited findings that Sharon "was mentally competent and had the testamentary capacity to execute the Will[,]" and that "[t]here is no evidence that she was susceptible to influence . . . in the drafting of her Will." Further, the findings had minimal effect on the issue of how the property was held.

## Conclusion

[¶33.] The circuit court did not err in concluding that the corrective deed severed Hanson's and Sharon's joint tenancy and created a tenancy in common.

There was no express language of joint tenancy in the corrective deed, and the antenuptial contract did not prevent Hanson and Sharon from holding the property as tenants in common.  Further, the court did not err in refusing Hanson's request for a jury trial in this equitable action.  Hanson has waived the issue of the circuit court's findings regarding undue influence and testamentary capacity, but even so, the findings were not clearly erroneous and had minimal effect on the outcome.  The circuit court's decision is affirmed.

[¶34.]    KERN, JENSEN, SALTER, and DEVANEY, Justices, concur.